## ROYAL-GLOBE INSURANCE COMPANY *vs.* THERESA M. CRAVEN.

Suffolk. November 4, 1991. - January 14, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Insurance*, Motor vehicle insurance, Uninsured motorist, Notice. *Notice*, Timeliness. *Estoppel. Limitations, Statute of.*

In an action by an insured, asserting a claim under the uninsured motorist provision of her standard Massachusetts automobile policy, which required notice to the insurer within twenty-four hours if the insured "has been involved in a hit and run accident," the judge correctly ruled in summary judgment proceedings that, in the case of an insured severely injured in such an accident, the policy required reasonably prompt notice, although not necessarily twenty-four hour notice; however, where the insured had been released from a hospital twenty-three days after the accident, had stopped her medication one week after leaving the hospital, and had returned to work about three months after the accident, her notice given to the insurer after an additional month was not reasonably prompt as matter of law. [631-634]

An insurer's conduct in investigating its insured's claim arising from a hit and run accident, and in stating one ground for denying liability, did not estop the insurer from raising failure to give prompt notice as a ground for denying liability, where it did not appear that the insurer's conduct had induced the insured to do something different from what she otherwise would have done and which resulted to her harm. [634-636]

In an action by an insured against her motor vehicle insurer, seeking indemnification under her uninsured motorist coverage for injuries she received in a hit and run accident, this court expressed the view that the judge correctly applied the six-year period of limitations prescribed by G. L. c. 260, § 2. [636-639]

CIVIL ACTION commenced in the Superior Court Department on March 11, 1985.

The case was heard by *Elizabeth B. Donovan*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David D. Dowd* for the plaintiff.

*Nicholas A. Felici* (*Ira D. Feinberg* with him) for the defendant.

*Walter A. Costello, Jr., Frank C. Corso & Anthony Tarricone*, for Massachusetts Academy of Trial Attorneys, amicus curiae, submitted a brief.

*Stephen M. A. Woodworth*, for Kemper National Insurance Company & others, amici curiae, submitted a brief.

ABRAMS, J. At issue is the liability under an uninsured motorist policy of Royal-Globe Insurance Company (Royal-Globe) to its insured, Theresa M. Craven (Craven), for personal injuries suffered by Craven in a hit and run accident. Royal-Globe sought a declaratory judgment that it was not liable to Craven because Craven's notice to Royal-Globe was not timely. Further, Royal-Globe asked for a declaration that the applicable statute of limitations was three years pursuant to G. L. c. 260, § 2A (1990 ed.), and hence the complaint, which was filed more than three years after the accident, was barred by the statute of limitations. On cross-motions for summary judgment, the Superior Court judge entered a summary judgment for Craven, denied Royal-Globe's motion for summary judgment, and ordered that the matter proceed to arbitration.[1] Royal-Globe appealed. We transferred the appeal to this court on our own motion. We reverse and order that a judgment be entered declaring that Royal-Globe is not liable to Craven because Craven's notice to Royal-Globe was not timely. We also express our views on the appropriate statute of limitations. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

The facts are as follows. In the early morning of September 19, 1979, Craven was injured in a hit and run automobile

---

[1]The judgment did not declare the rights of the parties. "When an action for declaratory relief is properly brought . . . [t]he rights of the parties should be declared" (citations omitted). *Attorney Gen.* v. *Kenco Optics, Inc.*, 369 Mass. 412, 418 (1976). *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 845 (1977).

accident. According to Craven, an unidentified motor vehicle forced her automobile off the road and into a wall barrier. Craven was taken by ambulance to a hospital, where she was treated for a number of serious injuries. She remained in intensive care for several days and was released from the hospital twenty-three days after the accident.

Craven gave Royal-Globe formal notice of her claim on January 23, 1980. Royal-Globe denied her claim for recovery under her uninsured motorist policy on April 6, 1981.[2] On December 12, 1984, Craven filed a demand for arbitration of her uninsured motorist claim. On March 11, 1985, Royal-Globe filed a complaint in Superior Court seeking a declaration that it had no obligation to submit to arbitration as it was not liable under the policy.[3]

1. *Timely notice.* Royal-Globe asks us to reverse the summary judgment for Craven on the ground that Craven did not comply with her contractual obligation to give timely notice of her claim.[4] Craven asserts that whether her notice to Royal-Globe was sufficiently prompt in the circumstances is a question of fact. Craven further maintains that therefore this court may only reverse if the allowance of summary judgment constitutes an abuse of discretion or clearly is erroneous.

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P. 56 (c), 365

---

[2]Royal-Globe paid Craven's claims under her Personal Injury Protection and Medical Payments policies and her claim for property damages.

[3]The arbitration has been stayed pending the outcome of this action.

[4]The standard Massachusetts automobile insurance policy in question instructs the insured what to do "[w]hen [t]here is an [a]ccident or [l]oss." The policy requires that the insured notify both the police and the insurance company within twenty-four hours if the insured has "been involved in a hit and run accident." The policy further requires that, in all events, the insurance company "must be notified *promptly* of the accident or loss" (emphasis added).

Mass. 824 (1974). What constitutes timely notice under the insurance policy is a matter of contract interpretation and is therefore "a matter of law for the court." *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 157 (1983), citing *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 334 (1980). *Sands* v. *Arruda*, 359 Mass. 591, 595 (1971). *Tri-City Concrete Co.*, v. *A.L.A. Constr. Co.*, 343 Mass. 425, 427 (1962). The judge correctly determined that, in these circumstances, the policy required prompt notice. Because the facts here are undisputed, whether Craven's notice was prompt also is a question of law. *Powell* v. *Fireman's Fund Ins. Co.*, 26 Mass. App. Ct. 508, 513 (1988), quoting *Segal* v. *Aetna Casualty & Sur. Co.*, 337 Mass. 185, 188 (1958) ("What is a reasonable time is a question of fact, but where the basic facts are undisputed it becomes a question of law"). We turn to the language of the policy.

The uninsured motorist policy in effect at the time of the accident requires notice to both the police and the insurer "[w]ithin [twenty-four] hours . . . if [the insured has] . . . been involved in a hit and run accident." The judge concluded, however, that Craven "was in the intensive care unit during the first twenty-four hours [after the accident]" and could not be expected to notify the police and her insurance company within twenty-four hours. The judge ruled that Craven therefore was excused from the twenty-four hour notice requirement.

Royal-Globe maintains that the judge's ruling on excuse was error because someone hired an attorney to represent Craven the morning of the accident. If Craven or someone acting on her behalf was able within twenty-four hours to engage a lawyer to represent her, Royal-Globe argues, it was error for the judge to conclude that Craven was excused from the twenty-four hour notice requirement.[5] It is undisputed that Craven remained in intensive care for several days

---

[5]That a lawyer was hired by someone within twenty-four hours does not indicate that Craven either authorized the hiring of the attorney or that she was able to authorize an attorney to give notice on her behalf.

after the accident. The judge determined that to expect Craven to give notice while she was in intensive care would be "unreasonable." There was no error in that determination.

Royal-Globe next maintains that even if twenty-four hour notice was excused because of disability, the requirement should be reimposed once the disability is removed. Under this interpretation of the policy, disability tolls the running of the twenty-four hour period but does not dispense with it. The judge concluded that in the event that twenty-four hour notice is excused initially by disability, as was the case here, the policy requires prompt notice but not necessarily twenty-four hour notice. We agree. The language of the policy puts a time pressure on the insured to notify the company immediately after the disability is removed.

Royal-Globe contends that based on the undisputed facts in this record, Craven's notification, given more than four months after the accident and more than three months after her release from the hospital, was not prompt. We agree. Royal-Globe argues, and Craven does not dispute, that Craven was released from the hospital twenty-three days after the accident and that she stopped using medication one week after leaving the hospital. While at home, Craven was able to leave her home to visit doctors and dine out with her family. While she was at home, Craven also communicated with her office. Craven returned to work roughly three months after the accident; she did not give notice to Royal-Globe for another month. On this record, we cannot tell precisely when Craven's disability was removed, but it is clear that she did not notify Royal-Globe immediately thereafter.[6]

---

[6]The judge reasoned that, where there is an ambiguous provision in an insurance policy, the court must construe it strictly against the insurer. There was, however, no ambiguity in the policy's use of the term "promptly." In any event, the rule of strict construction against the insurer would not apply to this case. This is "because the policy language is controlled by the Commissioner of Insurance and not the insurer." *Moore* v. *Metropolitan Property & Liab. Ins. Co.*, 401 Mass. 1010, 1011 (1988), citing *Bilodeau* v. *Lumbermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984). See *Cardin* v. *Royal Ins. Co.*, 394 Mass. 450, 453 (1985). See also *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986).

The burden of proving that she gave her notice promptly was on Craven. *Segal* v. *Aetna Casualty & Sur. Co.*, 337 Mass. 185, 187 (1958), citing, inter alia, *Nichols* v. *Continental Ins. Co.*, 265 Mass. 509, 511 (1929). Regardless of when her disability is determined to have disappeared, Craven's notice to Royal-Globe was not "performed readily or immediately[; nor was it] given without delay or hesitation." Webster's Third New Int'l Dictionary 1816 (1961). Giving "prompt" its fair meaning, Craven did not notify Royal-Globe promptly as a matter of law.[7]

Craven contends that Royal-Globe is estopped from raising her failure of notice as a basis to deny liability. Craven maintains that from the time she notified Royal-Globe of her claim, the company investigated the claim, communicated with her counsel about the status of the claim, and even informed her counsel of the possibility that liability might be denied because of a failure of proof — all without ever reserving the right to deny the claim based on late notice. The absence of such a reservation of rights, Craven argues, estops

[7]We have said, albeit in dicta, that an insured "did not act with reasonable promptness" when it waited forty-six days after learning of a claim before notifying its insurer. *Depot Cafe, Inc.* v. *Century Indem. Co.*, 321 Mass. 220, 225 (1947). Similarly, an injured plaintiff who did not notify his insurer of his claim on the policy for two months and six days did not act "with reasonable promptness" and thereby violated the policy's requirement of immediate notice. *Wainer* v. *Weiner*, 288 Mass. 250, 252 (1934). In construing analogous notice provisions, we have held that similar, and even shorter, delays in notifying insurers barred recovery. Cf., e.g., *Brackman* v. *American Employers' Ins. Co.*, 349 Mass. 767 (1965) (forty days not "as soon as practicable"); *Segal* v. *Aetna Casualty & Sur. Co.*, *supra* at 188-189 (four months and four days [approximately same as present case] not "as soon as practicable"); *Phillips* v. *Stone*, 297 Mass. 341, 342 (1937) (judge's determination that notice given twenty days after accident not "as soon as practicable" was "warranted, if not required [as matter of law]"). The Appeals Court has similarly held. Cf., e.g., *Morse* v. *Employers Liab. Assurance Corp., Ltd.*, 3 Mass. App. Ct. 712 (1975) (three months and two weeks not "as soon as practicable"); *Powell* v. *Fireman's Fund Ins. Co.*, *supra* at 509 (more than four months not "as soon as practicable").

the company from denying liability because of her late notice.[8]

"In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm . . . ." *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 112 (1983), quoting *Lunt* v. *Aetna Life Ins. Co.*, 261 Mass. 469, 471 (1928). As we have previously noted, "where the denial of liability takes place after the expiration of the period for . . . [giving prompt notice], it cannot be said that the insured has been induced to forego steps to prevent a default under the policy, for the default has already occurred. Consequently, there is no basis for an estoppel." *Milton Ice Co., Inc.* v. *Travelers Indem. Co.*, 320 Mass. 719, 722 (1947), citing *Salonen* v. *Paanenen*, 320 Mass. 568, 573 (1947). See *Powell* v. *Fireman's Fund Ins. Co.*, *supra* at 512.

Moreover, "[t]he mere statement of one ground for denying liability without explanatory words or circumstances does not warrant the inference of an intention to relinquish other defences." *Sheehan* v. *Commercial Travelers' Mut. Accident Ass'n*, 283 Mass. 543, 552 (1933). See *New England Structures, Inc.* v. *Loranger*, 354 Mass. 62, 66 (1968) ("While of course one cannot fail in good faith in presenting his reasons as to his conduct touching a controversy, he is not prevented from relying upon one good defence among others urged simply because he has not always put it forward, when it does not appear that he has acted dishonestly or that the other party has been misled to his harm, or that he is estopped on

---

[8]Craven also argues that Royal-Globe's payment of her personal injury protection, medical benefits, and collision benefits claims is inconsistent with its denial of benefits under the uninsured motorist policy. Royal-Globe replies, however, that these benefits are recoverable in a one-car accident. Timely notice of these claims is thus not as crucial to the insurance company. Generally, in a one-car accident, fault is not an issue. Craven's argument would require litigation as to claims in which there is no controversy, if there are some claims in dispute. We decline to adopt such a rule.

any other ground," quoting *Bates* v. *Cashman*, 230 Mass. 167, 168-169 [1918]).

Because Craven's notice was not prompt, and because Royal-Globe was not estopped from defending against liability on the basis of Craven's late notice, a judgment declaring that Royal-Globe is not liable to Craven because the notice was not timely should be entered.

2. *The applicable statute of limitations.* Although our resolution of the notice issue disposes of this case, the parties and the amici express concern over the applicable statute of limitations. Because the issue has been fully briefed, we express our view. See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943). Royal-Globe argues that the judge erred in applying a six-year limitations period pursuant to G. L. c. 260, § 2 (1990 ed.).[9] Because Craven's claim is an action "of contract to recover for personal injuries," Royal-Globe maintains, it should be subject to the three-year limitations period prescribed by G. L. c. 260, § 2A (1990 ed.). This argument is without merit. The judge was correct to apply the six-year statute of limitations governing contract actions.

Under Massachusetts law, the determination of whether the contract or tort statute of limitations applies is controlled by the essential nature of a party's claim. See *Hendrickson* v. *Sears*, 365 Mass. 83, 85 (1974); *Kagan* v. *Levenson*, 334 Mass. 100, 103 (1956). See also *Desmond* v. *Moffie*, 375 F.2d 742, 743-744 (1st Cir. 1967). Royal-Globe is not liable to Craven as a tortfeasor; it is liable solely on its contract to indemnify her against personal injury. The judge thus concluded that an action on an uninsured motorist policy is an action in contract for indemnification. The judge's conclusion is supported by the majority of courts that have considered

[9]The parties do not dispute that Craven's action was timely if governed by the six-year limitations period of G. L. c. 260, § 2 (1990 ed.), and time-barred if governed by the three-year limitations period of G. L. c. 260, § 2A.

the question of the statute of limitations applicable to an action on an uninsured motorist policy.[10]

Royal-Globe attempts to distinguish the weight of authority by arguing that G. L. c. 260, § 2A (1990 ed.), is unique among State statutes. The flaw in this argument is that the present action does not fall within the scope of c. 260, § 2A. Royal-Globe maintains that Craven's action is literally an action "of contract to recover for personal injuries."[11] G. L. c. 260, § 2A (1990 ed.). We do not agree. In discussing G. L. c. 260, § 2A, we said that "[t]he 1948 amendment [that enacted the statute] was designed to produce more uniformity in limitation of actions of tort generally and of actions of contract for personal injuries. The focus of the draftsmen was on accidents *resulting in* injuries to person or property

---

[10]Craven directs our attention to cases from eighteen States whose courts apply the contract statute of limitations: *Cline* v. *Aetna Ins. Co.*, 317 F. Supp. 1229 (S.D. Ala. 1970); *Transnational Ins. Co. v. Simmons*, 19 Ariz. App. 354 (1973); *Allstate Ins. Co.* v. *Spinelli*, 443 A.2d 1286 (Del. 1982); *Burnett* v. *Fireman's Fund Ins. Co.*, 408 So. 2d 838 (Fla. App. 1982); *Sykes* v. *Fireman's Fund Ins. Co.*, 269 F. Supp. 229 (S.D. Fla. 1967); *Burgo* v. *Illinois Farmers Ins. Co.*, 8 Ill. App. 3d 259 (1972); *Lemrick* v. *Grinnell Mutual Reinsurance Co.*, 263 N.W.2d 714 (Iowa 1978); *Van Hoozer* v. *Farmers Ins. Exch.*, 219 Kan. 595 (1976); *Booth* v. *Fireman's Fund Ins. Co.*, 253 La. 521 (1968); *Jacobs* v. *Detroit Auto Inter-Ins. Exch.*, 107 Mich. App. 424 (1981); *Edwards* v. *State Farm Ins. Co.*, 574 S.W.2d 505 (Mo. App. 1978); *Selected Risks Ins. Co.* v. *Dierolf*, 138 N.J. Super. 287 (1975); *De Luca* v. *Motor Vehicle Accident Indemnification Corp.*, 17 N.Y.2d 76 (1966); *Schultz* v. *Allstate Ins. Co.*, 17 Ohio Misc. 83 (1968); *Turley* v. *Farmers Ins. Exch.*, 259 Or. 612 (1971); *Pickering* v. *American Employers' Ins. Co.*, 109 R.I. 143 (1971); *Schlief* v. *Hardware Dealer's Mut. Fire Ins. Co.*, 218 Tenn. 489 (1966); *Franco* v. *Allstate Ins. Co.*, 505 S.W.2d 789 (Tex. 1974); *Sahloff* v. *Western Casualty & Sur. Co.*, 45 Wis. 2d 60 (1960). Royal-Globe asserts, without citation to authority, that other States have held the contrary. It is clear, however, that most, if not all, courts that have considered the question have applied the contract statute.

[11]Royal-Globe cites the decision of a Florida court, *Lumbermens Mut. Casualty Co.* v. *August*, 530 So. 2d 293 (Fla. 1988), that held that Massachusetts law would treat an action on an uninsured motorist policy as an "action of contract to recover for personal injuries" rather than a contract action for indemnity. The Supreme Court of Florida, however, devoted one sentence to this conclusion and notably analyzed neither the relevant Massachusetts statutes nor case law.

. . ." (emphasis added). *Hendrickson* v. *Sears*, 365 Mass. 83, 89 (1974). The purpose of G. L. c. 260, § 2A, was to insure that defendants responsible for personal injuries would not be vulnerable to suit for a longer period of time if sued in contract than if sued in tort. See *id.*

Craven's injuries, however, did not result from Royal-Globe's conduct, and she could not sue her insurer in tort. The basis of Royal-Globe's liability is not its actions resulting in personal injury but, rather, its contractual promise to indemnify against such injury. Accord *Lemrick* v. *Grinnell Mut. Reinsurance Co.*, 263 N.W.2d 714, 716-717 (Iowa 1978) ("We have decided to follow the weight of authority, as we agree basically with the analysis in those decisions. . . . [W]e think in reality the action [on an uninsured motorist policy] is bottomed on the policy. To be sure, the circumstances of the uninsured motorist's culpability and of the insured's damages are propositions which the insured must prove in order to recover from the insurer, but these are really conditions of the insurer's contract. The action itself appears to us to be upon the uninsured motorist clause, without which the insurer would owe nothing irrespective of the flagrancy of the uninsured motorist's culpability and the extent of the insured's damage").

Royal-Globe also argues that applying the six-year statute of limitations would work an unfair hardship on an insurance company as a subrogee of its insured in an action against an uninsured motorist. The plaintiff notes that under the subrogation provisions of G. L. c. 175, § 113L (4) (1990 ed.), it is entitled, after full payment to its insured, to be subrogated to Craven's rights against the unknown tortfeasor. The tort statute of limitations, however, governs any action by Royal-Globe as subrogee of Craven against the hit and run tortfeasor. 12A G.J. Couch, Insurance § 45:655, at 223 (1981). Royal-Globe maintains that it is unfair to allow an insured six years in which to claim under an uninsured motorist policy while restricting to three years the period in which the insurer, as subrogee, may sue the tortfeasor. The

brief answer to this argument is that it is properly addressed to the Legislature.

In *Lemrick* v. *Grinnell Mut. Reinsurance Co.*, *supra*, the Supreme Court of Iowa reflected that the insurance company in that case "argues with some persuasiveness . . . that if its insured does not sue it . . . until two years [the statutory limitations period applicable to torts] have elapsed, then it can no longer successfully sue the uninsured motorist by way of subrogation, as two years on the tort action against him would have run out . . . .. [The insureds] do not deny that if [their insurer] pays them, it will be subrogated pro tanto to their rights against the uninsured motorist. We do not pursue this argument, however, and make no pronouncement upon it, as we think the insured's cause of action on the uninsured motorist clause is so clearly contractual that the matter of subrogation cannot change the result." (Citations omitted.) *Id.* at 717. The Iowa Supreme Court concluded by holding that if there were an injustice inherent in this structure, "the proper avenue [of redress] would be to the legislature." *Id.*

The judgment is reversed. The matter is remanded to the Superior Court for judgment declaring that Craven's notice was not timely and therefore Royal-Globe is not liable to Craven.

*So ordered.*